**Edith ROSSER, Plaintiff,**

v.

**LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL NUMBER 438, Defendant.**

**Civ. A. No. 18346.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 3, 1974.

L. Penn Spell, Jr., Spell & Barmeyer, Atlanta, Ga., for plaintiff.

William A. McHugh, Jr., Adair, Goldwaite, Stanford & Daniel, P. A., Atlanta, Ga., for defendant.

## ORDER

JAMES C. HILL, District Judge.

This case is before the Court on defendant's motion for summary judgment. For the purposes of this motion, the defendant has admitted all material allegations of plaintiff's complaint. Defendant basically argues that even if the sole reason for plaintiff's dismissal from her job were because of her political activities, she has not stated a claim upon which relief can be granted.

Plaintiff, Edith Rosser, was employed by defendant, Laborers' International Union of North America, AFL–CIO, Local 438 (hereinafter referred to as Local 438). In her position as dues posting clerk she had been hired by defendant's secretary-treasurer, Mr. J. B. Underwood. She worked in this position for some five years. As a member of the office staff, plaintiff was allowed to become a member of Local 438 solely so she could benefit from the various fringe benefit programs offered by the Union. In April, 1972, she was nomi-

nated as a candidate for secretary-treasurer of Local 438 in direct opposition to her supervisor, J. B. Underwood. Plaintiff's candidacy was held not valid by the International Union as she was not a member "working at the calling."[1] Mr. Underwood was duly re-elected to the office of secretary-treasurer and two days later, he fired plaintiff. The issue here is whether or not plaintiff's dismissal from Union employment is violative of her rights under Title I of the Labor-Management Reporting and Disclosure Act 29 U.S.C. Sec. 529 (hereinafter referred to as The Landrum-Griffin Act).

There appears to be a conflict among the Circuits[2] as to whether discharge from Union employment solely for the exercise of protected statutory rights is prohibited by Section 609 of the Landrum-Griffin Act 29 U.S.C. Sec. 529. The Ninth Circuit, in Grand Lodge of IAM v. King, 335 F.2d 340 (9th Cir. 1964), held that to fire an employee because he exercised his right of freedom of speech under Section 101(a)(2) of the Act would be in violation of Section 609 which prohibits the Union from disciplining any employee "for exercising any right to which he is entitled under the provisions of this [Act]." This decision has been followed by numerous other courts,[3] but it was not until recently that the Fifth Circuit ruled on this question.

In Wambles v. International Bros. of Teamsters, Chauffeurs, 488 F.2d 888 (5th Cir. 1974), the Court held that appointed officers and employees were subject to discharge, without cause. In this *per curiam* decision, the Court appended the order of Judge Virgil Pittman[4] granting summary judgment for the Union in the District Court. The facts in that case are very similar to the facts in the instant case. Plaintiffs, appointed employees of the Union, were discharged by the Local's business manager after they had opposed his candidacy for election to that office.[5] Judge Pittman reasoned:

> It can be argued that an appointed officeholder under the president who has opposed him in the election does not guarantee obstructionist policies while he serves in his position as an appointed Union official and that before the appointed official could be discharged for cause he would have to show an actual conflict of interest. This is a rather charitable view of persons recently involved in political conflict. A more realistic view would be that in a great majority of cases the friction generated in the election campaign would infect and seriously impede the successful candidate's implementation of his program approved by the membership electing him. 488 F.2d at 889.

> ＊　　＊　　＊　　＊　　＊　　＊

> The elected officials necessarily rely on appointed officials to implement policies and plans presumably approved by the Union membership in the election. To tie the President's hands, an elected official, by not allowing him to discharge without cause or for any reason those who must

1. It is noted that both parties in briefs agree that plaintiff is not attempting in this action to complain of her having been disqualified as a candidate in the Union election. Her only challenge is to her discharge from employment.

2. Compare Sheridan v. United Brotherhood of Carpenters, 306 F.2d 152 (3rd Cir. 1962) with Grand Lodge of IAM v. King, 335 F.2d 340 (9th Cir. 1964).

3. George v. Bricklayers Union, 255 F.Supp. 239 (E.D.Wis.1966); DeCampli v. Greeley, 293 F.Supp. 746 (D.N.J.1968); Retail Clerks Local 648 v. Retail Clerks International Assoc., 299 F.Supp. 1012 (D.D.C. 1969); Cefalo v. District 50, UMW, 311 F. Supp. 946 (D.D.C.1970).

4. United States District Court for the Southern District of Alabama.

5. Actually three plaintiffs were involved. Plaintiff Mosley opposed defendant Sherman for the office of business manager of the Local. Plaintiffs Wambles and Rachel supported the candidacy of Mosley. Sherman won the election and upon taking office, discharged the plaintiffs from their various positions.

serve under him, would so restrict the elected officers in the discharge of their duties that elections could be meaningless. 488 F.2d at 889–890.

\*   \*   \*   \*   \*   \*

Appointed officials certainly have the right to run for office, support or oppose any one of their choosing, promote or oppose any policy or program and not be discharged from membership in the Union or disciplined as a member, but it appears to me to go beyond the intent of the Act to freeze them in a job in which they serve not for a term, but at the pleasure of an elected official with appointive powers set out in the Unions' Constitution. 488 F.2d at 890.

The *Wambles* decision clearly sets out the Fifth Circuit's view with respect to the issue at hand, but plaintiff contends that this Court is not bound and should not follow the precedent of the *Wambles* case, because *Wambles* is inconsistent with the prior Fifth Circuit decision in Sewell v. Grand Lodge of IAM, 445 F.2d 545 (5th Cir. 1971).

It must be first noted that the discussion of the issue at hand in *Sewell* is clearly dictum, and even if it were not, the later decision of the Fifth Circuit would still be controlling. Further this Court does not believe that the Court in *Sewell* approved the reasoning and opinion of the Ninth Circuit in *King,* even though, they indicated that they were in accord with the thinking of the Ninth Circuit. In *Sewell,* the plaintiff had been fired from the employment of the Union after he had opposed an amendment to the Union's constitution supported by the Union's administration. The Court held that Sewell's action was barred by the Alabama statute of limitations, but even if it were not, Sewell would not be entitled to any relief.

An essential and elemental ingredient of all employment is basic loyalty by employees to the employer in performing the duties of the job for which they were hired. If a conflict of interest arises between an individual's desire to oppose the plans and policies of his employer and the discharge of the duties of the position in which he is employed, fundamental considerations of fair play would require him to remove himself from such a position.

445 F.2d at 551.

In conclusion, this Court finds that the decision of the Fifth Circuit in Wambles v. International Bros. of Teamsters, Chauffeurs, *supra,* is controlling, and that decision necessitates the holding that Local 438 is within its rights to summarily dismiss plaintiff from its employ on the grounds of her political activities within the Union.

Ordered defendant's motion for summary judgment is granted.

United States District Court, D. Massachusetts.