Keith R. RUNYAN, Plaintiff,

v.

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO, a labor organization; Carpenters District Council of Denver and Vicinity, a labor organization; Carpenters Drywall Acoustical Lather and Specialties, Local Union 1391, a labor organization; Bernard S. Martinez, individually and in his capacity as Financial Secretary and Business Representative —pro-tem, Carpenters Drywall Acoustical Lather and Specialties, Local Union 1391; August C. Schultehenrich, individually and in his capacity as President and member of the Executive Committee, Carpenters Drywall Acoustical Lather and Specialties, Local Union 1391, and Other as Yet Unnamed Co-Conspirators, Defendants.

Civ. A. No. 82-K-503.

United States District Court,
D. Colorado.

Dec. 30, 1982.

Bruce Anderson, Nelson & Harding, Denver, Colo., for plaintiff.

John W. McKendree, McKendree & Lubin, Denver, Colo., for United Broth. and Dist. Council.

Walter C. Brauer, III, Brauer, Simons & Buescher, P.C., Denver, Colo., for Local 1391.

Gerard C. Boyle, Englewood, Colo., for Schultehenrich and Martinez.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiff was suspended from his elected position as Financial Secretary and Business Representative of Local 1391. He brings this civil action charging violations of the Labor-Management Reporting and Disclosure Act of 1959, Sections 101(a)(2) and 102[1] of Title I, and § 609 of Title VI, The Landrum Griffin Act, 29 U.S.C. § 401 *et seq.* Jurisdiction is invoked under Title 29 U.S.C. §§ 412 and 529, Title 29 U.C.C. § 185, 42 U.S.C. § 1985 and 28 U.S.C. §§ 1331 and 1337. Defendants United Brotherhood of Carpenters and Joiners of America, AFL–CIO and Carpenters District Council of Denver and Vicinity move for summary judgment; defendants Local 1391, Martinez and Schultehenrich move for dismissal. The issues have been extensively briefed and the matter is now ripe for my determination.

In his amended complaint, plaintiff alleges that prior to April 13, 1981 he was a member in good standing of Local 1391 and the International within the meaning of Section 3 of the Labor-Management Reporting and Disclosure Act (LRMDA), 29 U.S.C. § 402, and was the duly elected Financial Secretary and Business Representative of Local 1391. On April 13, 1981 at the direction of the International president, William Konyha, plaintiff was suspended from his position with the Union pending completion of a financial audit of the books and records of 1391 and an investigation into allegations of mismanagement, misappropriation, overpayments, improper disbursements and unauthorized signatures. Plaintiff's credentials as representative to the Carpenters District Council of Denver and Vicinity were revoked April 14, 1981. Plaintiff additionally alleges that he has been barred from participation in union activities.

Plaintiff remains on suspended status and alleges that defendants have refused and failed to advise him of the results of the audits and any investigation despite a statement of a union representative that he would be advised, and have refused or failed to bring any formal or written charges. As a basis for his claims, plaintiff states that he and defendants had been "at

---

1. Section 101(a)(1) provides:

"Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

Section 101(a)(2) provides:

"Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organizations established and reasonable rules pertaining to the conduct of meetings; *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal contractual obligations."

Section 102 provides:

"Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

odds" over certain matters affecting the union before the date of his suspension. Not only did defendant Martinez "covet" plaintiff's position, but Martinez was appointed to the position after Runyan's suspension. Plaintiff maintains that the allegations of misappropriation of union funds which resulted in his suspension were wilfully and maliciously instituted by defendants with reckless and wanton indifference to the rights of plaintiff and seek to punish plaintiff for exercising his rights under the U.S. Constitution and the union constitution and to "coerce him to cease and desist from acting in opposition to certain District and International policies." (Pg. 4, Amended Complaint) Plaintiff also charges retaliation based on defendants' refusal and failure to bring charges as required under the union laws and constitution and asserts that these acts also were maliciously and wilfully done. Plaintiff maintains that defendants' actions constitute "discipline" within the meaning of § 609.

Plaintiff's first and second claims for relief are based on the LMRDA, the third claim alleges a violation of Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185, and the fourth claim is based on the Civil Rights Act of 1871, 42 U.S.C. § 1985(3). Plaintiff's fifth and sixth claims ask this court to exercise pendent jurisdiction over allegations of tortious interference with contract and defamation. Defendants seek summary judgment and dismissal as to all claims.

## THE LABOR–MANAGEMENT REPORTING & DISCLOSURE ACT CLAIMS

■ Defendants United Brotherhood and District Council move for summary judgment on plaintiff's LMRDA claims because (1) plaintiff's suspension was based on reasons unrelated to the exercise of Title I rights and (2) even if the suspension did arguably derive from the exercise of such rights, no claim is stated since his membership rights were unaffected. Defendants Local, Martinez and Schultehenrich aver the same arguments in support of their motion to dismiss these claims.

The Labor-Management Reporting and Disclosure Act of 1959 was the product of congressional concern with wide-spread abuses of power by union leadership. Title I of the Act, 29 U.S.C. §§ 411–415 is the "Bill of Rights of Membership of Labor Organizations." Sections 101(a)(1) and (2), §§ 411(a)(1) and (2), guarantee equal voting rights, and rights of speech and assembly to "[e]very member of a labor organization."

Section 609, 29 U.S.C. § 529, provides: It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter.

Defendants argue that plaintiff's suspension was not effected because of the exercise of his Title I rights, but was implemented solely because of legitimate concern over possible financial improprieties. Voluminous affidavits and documentation are supplied in support of this argument. Plaintiff rebuts this position by arguing that he has asserted sufficient evidence to show that his suspension from the elected office and from participation in union affairs was in retaliation for the exercise of his LMRDA rights.

Defendants cite numerous cases in support of their argument: *Schonfeld v. Penza,* 477 F.2d 899 (2nd Cir.1973); *Martire v. Laborers Local 1058,* 410 F.2d 32 (3rd Cir.) *cert. denied,* 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969); *Wood v. Dennis,* 489 F.2d 849 (7th Cir.1973) [en banc] *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974); and, *Kinney v. Electrical Workers,* 669 F.2d 1222 (9th Cir.1982). Plaintiff argues the opposite position and cites the following precedent in support: *Grand Lodge of International Assoc. of Machinists v. King,* 335 F.2d 340 (9th Cir.1964) *cert. denied,* 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964); *George v. Bricklayers, Masons & Plasterers International Union,* 255 F.Supp. 239 (E.D.Wis.1966); *DeCampli v. Greeley,* 239 F.Supp. 746 (D.N.J.1968); *Retail Clerks Union Local 648 v. Retail Clerks International Ass'n,* 299 F.Supp. 1012 (D.C.D.C.1969); *Lamb v. Miller,* 660 F.2d

792 (D.C.Cir.1981); *Maciera v. Pagan,* 649 F.2d 8 (1st Cir.1981); *Witt v. Myers,* 343 F.Supp. 873 (W.D.Mich.1971); *Salzhandler v. Caputo,* 316 F.2d 445 (2nd Cir.1963); *Wood v. Dennis, supra; Miller v. Holden,* 535 F.2d 912 (5th Cir.1976); *Cooke v. Organe Belt District Council of Painters,* 529 F.2d 815 (9th Cir.1976); and *Bradford v. Textile Workers, Local 1093,* 563 F.2d 1138, 96 LRRM 2690 (4th Cir.1977). Because of the obvious split of authority, the Supreme Court considered this issue recently in *Finnegan v. Leu,* —— U.S. ——, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982).[2]

The *Finnegan* case involved the discharge of appointed union business agents.[3] Like the instant action, suit was instituted under the Labor-Management Reporting & Disclosure Act of 1959, 73 Stat. 534, 29 U.S.C. § 401 *et seq.* The district court and the Sixth Circuit Court of Appeals both held that the Act did not protect the business agents from discharge, and the Supreme Court affirmed. The Court looked to the language of the various sections [101(a)(1) and (2) of the Act, 29 U.S.C. §§ 411(a)(1) and (2), and 29 U.S.C. § 529] and concluded

> [i]t is readily apparent, both from the language of these provisions and from the legislative history of Title I, that it was rank and file union members—not union officers, or employees, as such— whom Congress sought to protect. 102 S.Ct. at 1871.

As in the present action, petitioners in *Finnegan* argued that discharge from a position as a union employee or official constituted "discipline" under § 609. The Court rejected this argument and said:

> We conclude that the term 'discipline,' as used in § 609, refers only to retaliatory actions that affect a union member's rights or status *as a member* of the union. Section 609 speaks in terms of disciplining 'members'; and the three disciplinary sanctions specifically enumerated—fine, suspension and expulsion—are all punitive actions taken against union members as members. In contrast, discharge from union employment does not impinge upon the incidents of union membership, and affects union members only to the extent that they happen also to be union employees. (citations omitted) We discern nothing in § 609, or its legislative history, to support petitioners' claim that Congress intended to establish a system of job security or tenure for appointed union employees. *Id.*

Plaintiff here contends that he has been suspended from his position as Financial Secretary and Business Representative and has been banned from participation in all union affairs. Defendants dispute this contention and assert that the revocation of plaintiff's credentials do not affect his membership rights. Title I would clearly protect plaintiff from any infringement on his rights as a member of the union. The motion for summary judgment and motions to dismiss the LMRDA claims based on plaintiff's suspension as an official or employee of the union are granted and these claims are dismissed. Plaintiff may refile the Title I action as to any direct impingement of his rights as a member *qua* member.[4]

## THE § 301 CLAIM

■ Defendants also move for summary judgment and to dismiss plaintiff's third claim for relief filed under Section 301 of the Labor-Management Relations Act, 29

---

**2.** My research has failed to disclose an action in any other district or circuit court that has interpreted or followed the *Finnegan* case on this issue, however, the First Circuit Court of Appeals in *Macaulay v. Boston Typographical Union No. 13,* 692 F.2d 201 (1st Cir.1982) [what constitutes "discipline" under § 101(a)(5) ] and the United States District Court for the District of New Jersey in *United States v. Local 560,* 550 F.Supp. 511 (1982) [civil action under RICO, 18 U.S.C. § 1951; extortion of union members' rights] have cited *Finnegan* for other grounds.

**3.** The present action involves elected officials, a distinction which plaintiff attempts to overemphasize. I do not believe that the result of *Finnegan* would have been different had the plaintiffs been elected rather than appointed.

**4.** Defendants Local, Martinez and Schultehenrich also base their motions to dismiss on a failure to state a claim against them. Due to my ruling, I need not address this issue.

U.S.C. § 185 because of lack of jurisdiction. Defendants assert that there is no contract between the employer and the labor organization as is required for jurisdiction under § 185. Plaintiff responds that because he has set forth evidence establishing defendants' violations of the United Brotherhood Constitution and the April, 1977 employment agreement, he may invoke jurisdiction under § 301 of the LMRA. Defendants do not concede that the April, 1977 employment contract is valid.

Section 185(a) provides:

*Suits for violations of contracts between* an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The Tenth Circuit has considered this issue in *Adams v. International Brotherhood of Boilermakers,* 262 F.2d 835 (1985) and held that § 301(a)

by its express terms, is limited to suits between an employer and a labor organization or between labor organizations. 262 F.2d at 838.

Like the *Adams* case, this action is a suit between the labor organization and an individual member. This court has no subject matter jurisdiction under § 301(a). The motion for summary judgment and the motions to dismiss plaintiff's third claim for relief are granted.

## THE 1985(3) CLAIM

█ Plaintiff maintains that he has alleged all four elements [5] of a cause of action under 42 U.S.C. 1985(3) as outlined in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), that he was within his federally protected rights to express views contrary to those of the union leadership, and that the discriminatory action motivated by the content of his speech is sufficient to constitute the "invidiously discriminatory animus" required. Defendants have moved for summary judgment and dismissal of plaintiff's § 1985(3) claim.

Section 1985(3) authorizes recovery of damages where two or more persons conspire or go in disguise on the highway or on the premises of another for the purpose of depriving any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws. Section 1985(3) has been interpreted in *Griffin, supra* as applying only to private persons. This precedent has been followed by the Tenth Circuit in *Silkwood v. Kerr-McGee Corp.,* 637 F.2d 743 (1980), *cert. denied,* 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 111 (1981), and must govern in this action.

As was noted by the Tenth Circuit, conspiracies against unions have been found to be insufficient class-based animus. *Silkwood, supra* at 748.

To state a cause of action under section 1985(3) the law requires prejudice against a class *qua* class. Here it seems clear from the complaint as a whole that the feud, if there is one, is private; no general prejudice which transcends the immediate dispute is shown." *Id.*

A feud which is essentially private is not within the intended scope of coverage of § 1985(3). This feud, if it may be called such, is purely private in nature and requires the granting of defendants' motions for summary judgment and to dismiss.

## THE PENDENT CLAIMS: TORTIOUS INTERFERENCE WITH CONTRACT AND DEFAMATION

Because I have dismissed all federal causes of action alleged by plaintiff, there is no

---

**5.** "To come within the legislation a complaint must alleged that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly, or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or cause to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'" *Griffin v. Breckenridge,* 403 U.S. at 102–103, 91 S.Ct. at 1798–99.

necessity for addressing the pendent claims. The motions for summary judgment and to dismiss these claims are likewise granted. If I had considered these claims, my rulings would not be inconsistent with my previous rulings in *Williams v. Burns,* 540 F.Supp. 1243 (1982) and *Rodriquez v. Bar-S Foods,* 539 F.Supp. 710 (1982).

It is therefore ORDERED that United Brotherhood of Carpenters and Joiners of America, AFL–CIO and Carpenters District Council of Denver and Vicinity's motion for summary judgment as to all claims of plaintiff's complaint and amended complaint is granted. It is

FURTHER ORDERED that the motions of Local 1391, Martinez and Schultehenrich to dismiss all counts of plaintiff's complaint and amended complaint are granted, and this action is dismissed. It is

FURTHER ORDERED that plaintiff shall have 15 days from the date of this order within which to file a second amended complaint alleging with specificity any claims he may have regarding a violation of his Title I rights as a member (not an official or employee) of the union and any claims going toward his charge that he has been barred from all union activities.