SUSQUEHANNA INVESTMENT GROUP, a Pennsylvania general partnership; and William J. Morris Securities Traders, Inc., a Pennsylvania corporation, Plaintiffs,

v.

AMGEN BOULDER, INC., a Delaware corporation, f/k/a Synergen, Inc., Jon Saxe, Kenneth Collins, and Michael A. Catalano, individuals, Defendants.

Civil Action No. 95–B–1213.

United States District Court, D. Colorado.

March 8, 1996.

Gary J. Ceriani, Charles W. Bess, Michael P. Cillo, Davis & Ceriani, P.C., Denver, CO, Larry H. Spector, Barry E. Unger, Mann, Unger & Spector, Philadelphia, PA, for Plaintiffs.

James E. Nesland, William J. Leone, Mark A. Redmiles, Cooley, Godward, Castro, Huddleson & Tatum, Denver, CO, William S. Freeman, Tharan Gregory Lanier, Cooley, Godward, Castro, Huddleson & Tatum, Palo Alto, CA, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiffs, Susquehanna Investment Group (SIG) and William J. Morris Securities Traders, Inc. (Morris) (collectively, plaintiffs) bring this action under the antifraud provisions of the federal securities laws. Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa (Exchange Act); § 78j(b) and 78t(a) ((sections 10(b) and 20(a)); Rule 10b–5, 17 C.F.R. § 240.10b–5. Plaintiffs also bring common law claims of negligent misrepresentation and common law fraud. Defendants Amgen Boulder, Inc. (Amgen), formerly known as Synergen, Inc. (Synergen), Jon Saxe, Kenneth Collins, and Michael A. Catalano (collectively, defendants) move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss plaintiffs' complaint. The motion is adequately briefed and orally argued. I will deny the motion.

### I.

Plaintiffs are members of the Philadelphia Stock Exchange who traded Synergen securities as market makers in Synergen options. They allege that Amgen and certain directors and officers (the individual defendants) violated the antifraud provisions of § 10(b) of the Securities Exchange Act of 1934 (§ 10(b)), 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission (Rule 10b–5), 17 C.F.R. § 240.10b–5. Plaintiffs also seek to hold the individual defendants liable for the alleged misstatements and omissions under § 20(a) of the Securities Exchange Act of 1934 (§ 20(a)), 15 U.S.C. § 78t(a).

### II.

Under Rule 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *Id.* In reviewing the sufficiency of the complaint, all well-pled facts, as opposed to conclusory allegations, must be taken as true. *Weiszmann v. Kirkland & Ellis*, 732 F.Supp. 1540, 1543 (D.Colo. 1990). All reasonable inferences must be liberally construed in the plaintiff's favor. *Id.*

### III.

A comprehensive discussion about Synergen, the medical condition of sepsis, Synergen's development of the drug Antril, and Synergen's utilization of the drug trial results as set forth in *In re Synergen, Inc. Securities Litigation*, 863 F.Supp. 1409,

1411–14 (D.Colo.1994). Synergen was a biopharmaceutical company engaged in the discovery, development and manufacture of protein-based pharmaceuticals. The individual defendants here are: Jon Saxe (Saxe), Synergen's president and chief executive during the class period; Kenneth Collins (Collins), vice president of finance and administration; and Michael A. Catalano (Catalano), vice president of clinical research. I certified a class in *In re Synergen, Inc.* in orders dated March 9 and March 28, 1994. These plaintiffs opted out of the class and later filed this action.

Plaintiffs are securities traders who were market makers in Synergen options and as such, engaged in thousands of Synergen option transactions. They allege defendants "engaged in a common enterprise and course of conduct from at least November 7, 1991, through February 22, 1993 (the "manipulative period"), the purpose and effect of which was, *inter alia*, to artificially inflate or maintain the market price of Synergen common stock. Defendants accomplished this through the issuance of false and misleading statements to the public." (Complaint ¶ 11). Plaintiffs claim losses of over $3.19 million in Synergen option transactions during the 10–day period ending February 22, 1993 following disclosure of test results revealing the truth about the inefficacy of Antril. These disclosures caused a 34 point (70%) drop in the trading price of Synergen common stock from February 12 to February 22, 1993. (Complaint p. 2).

Plaintiffs allege that defendants misrepresented or concealed material facts concerning the clinical trial results of Antril. The defendants move for dismissal on the ground that plaintiffs are "market makers" and, thus, are not entitled to recover upon a "fraud on the market theory." Rather, defendants contend plaintiffs must plead and prove actual "reliance on the defendants' deception." (Def. Brf. p. 4). Defendants argue plaintiffs' have not plead adequately actual reliance.

### IV.

■ I held in *In re Synergen*, that this is a "fraud-on-the-market" securities case. The fraud-on-the-market theory is based on the proposition that in a market for securities which is "information efficient" the price of the securities issued by a company is determined by the available material information regarding the company and its business. *Basic, Inc. v. Levinson*, 485 U.S. 224, 247, 108 S.Ct. 978, 991–92, 99 L.Ed.2d 194 (1988); *T.J. Raney & Sons, Inc. v. Fort Cobb, Okl. Irr. Fuel Authority*, 717 F.2d 1330, 1332 (10th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984). Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations may be presumed in a securities fraud case. *Basic, Inc.*, 485 U.S. at 247, 108 S.Ct. at 991–92. At its simplest, the theory requires only that a plaintiff prove purchase of a security and that a material misrepresentation was made concerning the security by the defendant which resulted in an artificial change in price. *T.J. Raney*, 717 F.2d at 1332. Here, Synergen's stock price rose appreciably after the first allegedly misleading statement on November 7, 1991 and then plummeted after the phase III test results were announced on February 22, 1993. (Complaint ¶¶ 59–60.)

The issue in this case is whether these plaintiffs are entitled to rely on the fraud on the market presumption. Defendants argue that plaintiffs are not entitled to rely on the presumption because as market makers, they did not rely on the integrity of the market but rather engaged in conduct which was essential to setting the prices in the market on which *others* would rely.

■ The *Basic* Court acknowledged that the fraud on the market presumption could be rebutted by "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." *Basic Inc.*, 485 U.S. at 248, 108 S.Ct. at 992.

Defendants seek to distinguish these plaintiffs from the class members in *In re Synergen* because:

● plaintiffs had a regulatory obligation to investigate Synergen before they made any purchases or sales;

• plaintiffs are not small shareholders who relied on the market price of Synergen stock but are "market makers," institutional investors whose conduct influenced that price;

• plaintiffs did not buy or sell Synergen stock or options in "reliance" on Synergen's alleged statements, but rather executed trades to profit from the investment decisions of their customers; and

• plaintiffs bet both ways, "straddling" the market so that they could profit from Synergen's fortune and misfortune.

(Motion to Dismiss p. 2).

## V.

Plaintiffs may go forward on a 10(b) claim in one of two ways. They may allege that their losses were caused by their "actual reliance on the defendants' deception." *T.J. Raney & Sons, Inc. v. Fort Cobb*, 717 F.2d 1330, 1332 (10th Cir.1983); *Bank of Denver v. Southeastern Capital Group, Inc.*, 763 F.Supp. 1552, 1556 (D.Colo.1991). Absent allegations of direct reliance, plaintiffs may avail themselves of the fraud-on-the-market theory if they allege they purchased securities traded on an open and developed market. *See Basic Inc.*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), *Raney*, 717 F.2d at 1332–33; *Bank of Denver*, 763 F.Supp. at 1556.

Here, plaintiffs have pleaded direct reliance on defendants' deception. (Complaint ¶¶ 74, 75, 84, 86, 93). Thus, I will deny defendants' motion to dismiss on this ground.

Plaintiffs may also rely on the fraud on the market presumption of reliance if they prove purchase of a security and that a material misrepresentation was made concerning the security the defendants which resulted in an artificial change in price. *In re Synergen*, at 1421. Here, plaintiffs have alleged the same misrepresentations I found were material and sufficient to withstand a summary judgment motion in the class action. This is enough to survive a motion to dismiss.

Defendants' argument that plaintiffs as market makers in Synergen options are not entitled to the fraud on the market presumption is unavailing. The plain language of the Securities Acts does not exclude market makers from their protection. Also, in *Basic Inc.*, the Supreme Court referred specifically to breaking the "causal connection between the market price and the misrepresentation" if it could be shown that the "market makers" were "privy to the truth." *Id.* at 248, 108 S.Ct. at 992. Here, there is no allegation that plaintiffs knew of Synergen's misrepresentations or that there was any way they could have discovered the truth. Under these circumstances, I will deny the motion to dismiss.

Defendants also contend that plaintiffs may not rely on the fraud on the market theory to support their state law claims for negligent misrepresentation and fraud. This argument is misplaced. First, plaintiffs appear to seek to apply Pennsylvania law despite pleading under Colorado law. Complaint ¶ 88, 96. A response to a motion to dismiss is not the proper forum for a choice of law argument. Rather, this issue is better addressed in a summary judgment motion. Also, assuming Colorado law does apply, even if fraud on the market is not a viable claim in Colorado, *see Brody v. Bock*, 897 P.2d 769 (Colo.1995), plaintiffs have alleged actual reliance.

Accordingly, it is ORDERED that:

1) defendants' motion for dismissal is DENIED.